The STATE of Ohio, Appellee,

v.

SLOCUM, Appellant.

[Cite as *State v. Slocum* (1998), 131 Ohio App.3d 512.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 97 C.A. 168.

Decided Dec. 14, 1998.

*Paul J. Gains,* Mahoning County Prosecuting Attorney, and *Janice T. O'Halloran,* Assistant Prosecuting Attorney, for appellee.

*J. Dean Carro,* for appellant.

Cox, Judge.

This matter presents a timely appeal from a jury verdict and judgment rendered upon that verdict by the Mahoning County Common Pleas Court, finding defendant-appellant, Timothy Slocum, guilty of one count of complicity to commit murder in violation of R.C. 2903.02 and 2923.03 and one count of complicity to commit attempted murder in violation of R.C. 2903.02, 2923.02, and 2923.03.

On January 27, 1996 appellant attended a dance at Youngstown State University's Kilcawley Student Center, in the city of Youngstown, Mahoning County, Ohio. A fight broke out between appellant and a number of Youngstown State University ("YSU") football players. At trial, there was conflicting testimony as to what precipitated this fight. Appellant sustained minor injuries as a result of this fight.

A number of YSU football players and the YSU campus police broke up the fight. The campus police cleared the dance floor and brought the party to an end. Appellant was visibly upset and made a number of threats as the campus police escorted him from the building. The campus police chose not to detain appellant.

Appellant left the party at the Kilcawley Student Center and headed to the Class Act Bar. On the way to the Class Act, appellant encountered an acquaintance of his named Terrica Jones ("Jones"). While speaking with Jones, appellant continued to make threats against his attackers. Appellant warned Jones not to attend the football-player-sponsored after-dance party at 107 Park Avenue, in the city of Youngstown, Mahoning County, Ohio. A number of the individuals

involved in the fight earlier that day and Jermaine Hopkins, the victim, resided at the residence in question.

Appellant arrived at the Class Act bar and had a couple of drinks. Appellant left the bar and headed to the after-dance party at the aforementioned residence with his friends Anthony Howell ("Howell") and Darnell Bracy ("Bracy"). There was conflicting testimony at trial as to whether appellant spoke to his co-defendant in this matter, Eric Moore ("Moore") prior to leaving the bar and as to whether Moore followed appellant in a separate car to the after-dance party.

Appellant arrived at the party in the early morning hours of January 28, 1996 and Moore arrived shortly thereafter. Appellant and Moore started toward the house. An acquaintance of appellant's, Mack Gilchrist ("Gilchrist"), stopped appellant before he entered the porch area at the residence in question. Appellant stated, "I want all the 'niggers' that had something to do with what happened down on campus out here right now." Gilchrist saw Moore approaching, which indicated to him that there would be trouble, and ran into the house. At this point, Moore fired a shot in what appeared to be the direction of Leon Jones ("Leon"). Leon ran into the house to get his gun.

The events that occurred next are somewhat sketchy due to the fact that most of the people at the party had taken cover inside the house and were not watching what was going on outside. There appears to have been a pause of about ten to twenty seconds after the first shot. The victim left the cover of the house and went outside to investigate. At least two more shots were fired. One shot hit the victim in his right wrist and exited out of his right palm. The fatal shot entered the victim's body at the top left portion of his head, traveled in a downward, forward, and rightward direction and came to rest in the right side of the victim's neck.

At some point during or immediately after the second two shots were fired, appellant went to his car, got in and left the premises. Apparently, he drove his friends to the Class Act without making any comment about the events that had just taken place. There was conflicting testimony as to whether appellant met with Moore when he arrived at the Class Act.

Later that night appellant's friend, Bracy, called appellant and told him the Youngstown Police were investigating the shooting death of the victim. Appellant met Bracy and went down to the Youngstown Police station.

Appellant was arrested and charged with one count of complicity to commit aggravated murder in violation R.C. 2903.01 and 2923.03 and one count of complicity to commit attempted aggravated murder in violation of R.C. 2903.01 and 2923.03. Each count contained a firearm specification. Appellant pled not guilty to each count.

The jury trial of this matter began on July 24, 1997. On July 30, 1997, the jury found appellant guilty of the lesser included offenses of complicity to commit murder and complicity to commit attempted murder, but not guilty on the firearm specifications. On July 31, 1997, appellant was sentenced to an indefinite incarceration period of not less than fifteen years nor more than life on the complicity to commit murder conviction, and an indefinite incarceration period of not less than ten nor more than twenty-five years on the complicity to commit attempted murder conviction. These sentences were set to run concurrently.

Appellant sets forth two assignments of error on appeal.

Appellant's first assignment of error alleges:

"Appellant Slocum's convictions were based upon insufficient evidence to prove complicity in murder and attempted murder beyond a reasonable doubt. The state failed to demonstrate a connection between appellant and the alleged co–conspirator's action, thus violating appellant's rights under the Due Process Clause of the Fourteenth Amendment of the United States Constitution and Article I, Section 16 of the Ohio Constitution."

■ Appellant argues that plaintiff-appellee, state of Ohio, did not produce sufficient evidence to prove beyond a reasonable doubt that there were the specific intent and culpability necessary to sustain his convictions for complicity to commit murder and complicity to commit attempted murder. Therefore, appellant contends that his convictions for complicity in these crimes were improper.

Appellant asserts that appellee had to prove that he acted "purposely" to obtain a conviction on these charges. Appellant contends that the only evidence that appellee proffered to show that he acted purposely was the various threats made by appellant after the fight at YSU. Appellant argues that because the campus police had the opportunity to observe him and did not detain him, they must have determined that he did not have the purposeful intent to bring about this murder. Appellant also asserts that conversations he had soon after the fight at YSU with Jones demonstrate that he did not have the purposeful intent to bring about this murder.

Appellant also contends that there was not sufficient evidence of a connection between himself and Moore to convict him of complicity. Appellant claims that only one witness provided any evidence that there was a connection and asserts that this testimony was not sufficient to show a plan or pact between appellant and Moore to commit any criminal act.

■ "Sufficiency" is a legal standard that is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to

support the jury verdict as a matter of law. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541. In essence, sufficiency is a test of adequacy. Whether the evidence presented in a case is legally sufficient to sustain a verdict is a question of law and a conviction based upon legally insufficient evidence constitutes a denial of due process. *Thompkins, supra.* To reverse a trial court's judgment on the finding of insufficient evidence, an appellate court need only have a concurring majority of the reviewing panel. *Thompkins, supra.*

R.C. 2923.03(A) provides:

"(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:

"(1) Solicit or procure another to commit the offense;

"(2) Aid or abet another in committing the offense;

"(3) Conspire with another to commit the offense in violation of section 2923.01 of the Revised Code;

"(4) Cause an innocent or irresponsible person to commit the offense."

The culpability required to convict an individual of murder or attempted murder is that the individual acted purposefully in taking the life of another or attempting to take the life of another. R.C. 2903.02 and 2923.03.

Appellant threatened to kill a number of people after he was injured at YSU. Appellant went to the Class Act Bar and gathered a group of individuals to go with him to the residence at 107 Park Avenue. Appellant arrived at said residence and called for all of the people that were involved in the fight at YSU to come out of the house. One of the individuals appellant brought with him to the residence opened fire with a handgun.

It is clear from the above facts that appellant was acting purposefully on the night in question. It makes no difference that police officers had a chance to evaluate appellant on the night in question and did not feel that he was any threat. The only thing that this possibly shows is that the police officers misconstrued appellant's threats as idle. There was clearly sufficient evidence of the appellant's culpability for this case to go to the jury.

Appellant and appellee presented conflicting evidence regarding the connection between appellant and Moore. The evidence that tended to show a connection between appellant and Moore included: testimony that after the fight appellant spoke with Moore at the Class Act Bar; testimony that appellant and Moore left the bar together; testimony that Moore followed appellant to the residence at 107 Park Avenue; testimony that Moore and appellant approached the house together; and testimony that appellant left the scene of the shooting and met with Moore back at the Class Act Bar. The aforementioned testimony provided

sufficient evidence for the jury to infer that appellant solicited, aided, abetted, or otherwise cooperated with Moore in the commission of the crime. Just because appellant's evidence contradicts appellee's does not negate the sufficiency of appellee's evidence. It was within the province of the jury to evaluate the credibility of the conflicting witnesses and to weigh the evidence presented to determine if there was the requisite connection between appellant and Moore to find appellant guilty of complicity.

Appellant's first assignment of error is found to be without merit.

Appellant's second assignment of error alleges:

"Appellant Slocum's murder conviction was against the manifest weight of the evidence as to whether the weapon used by Eric Moore was the weapon used in the crime, thereby constituting a violation of Article IV, Section 3, of the Ohio Constitution."

■ Appellant argues that the manifest weight of the evidence did not show that Moore fired the fatal shot, making the complicity to commit murder conviction inappropriate. Appellant bases this conclusion upon testimony presented by his expert at trial that the fatal shot did not originate from where Moore stood, but rather, from above and behind the victim.

Appellant also points to the testimony offered by the coroner, Dr. Giles. Dr. Giles's testimony showed that the bullet entered the top left portion of the victim's head and moved downward, forward, and to the right. Appellant contends that this bolsters his theory that the fatal shot came from above, behind, and to the left of the victim.

Appellant also points to the fact that the only weapon that was recovered at the crime scene was not properly tested to eliminate or establish it as the murder weapon. It was alleged that this weapon was last seen in an upstairs bedroom, where the fatal shot could have been fired. Appellant states that this weapon was not tested for recent firing, ballistics, or fingerprints. This weapon was disregarded as the possible murder weapon because the firing pin was missing. Appellant contends that the firing pin on this model of gun was easily removable; therefore the weapon should have been tested. Appellant argues that appellee did not show that the weapon recovered from the residence could not have been the murder weapon and that in fact the weapon was "consistent" with the caliber of weapon that killed the victim.

Appellant also relies upon the testimony of Leon Jones, who, after being shot, ran into his upstairs bedroom to get his gun, where the trajectory expert testified the fatal shot could have been delivered. This was the last place the "consistent" nine-millimeter weapon found at the scene was known to be.

Appellant molds these facts, along with the fact that no one witnessed the fatal shot, into a theory in which the victim was killed by "friendly fire." Appellant concludes that this would make his complicity-to-commit-murder conviction against the manifest weight of the evidence.

In determining if a judgment is against the manifest weight of the evidence, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier-of-fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492.

The Ohio Supreme Court in *Thompkins, supra,* 78 Ohio St.3d 380, 678 N.E.2d 541, has recently held that "weight of the evidence" and "sufficiency of the evidence" are not synonymous legal concepts. "Sufficiency" is a legal standard that is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law. *Thompkins, supra.* In essence, sufficiency is a test of adequacy. Whether the evidence presented in a case is legally sufficient to sustain a verdict is a question of law and a conviction based upon legally insufficient evidence constitutes a denial of due process. *Thompkins, supra.* To reverse a trial court's judgment on the finding of insufficient evidence, an appellate court need only have a concurring majority of the reviewing panel. *Thompkins, supra.*

To reverse a trial court's judgment based upon the weight of the evidence, when such judgment results from a jury trial, a unanimous concurrence of all three appellate judges on the reviewing panel is required. *Thompkins, supra.* With regard to the weight of the evidence issue, the Ohio Supreme Court stated:

"Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence,* offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief.'* * * *

"When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony. * * *" (Emphasis added.) *Thompkins, supra,* at 387, 678 N.E.2d at 546–547.

**520**

In *State v. Mattison* (1985), 23 Ohio App.3d 10, 23 OBR 43, 490 N.E.2d 926, syllabus, the court offered guidance in considering a weight of the evidence issue as follows:

"In determining whether the decision of a trial court is against the manifest weight of the evidence, the following factors are guidelines to be taken into account by the reviewing court:

"1. The reviewing court is not required to accept as true the incredible;

"2. whether the evidence is uncontradicted;

"3. whether a witness was impeached;

"4. what was *not* proved;

"5. the certainty of the evidence;

"6. the reliability of the evidence;

"7. whether a witness' testimony is self-serving;

"8. whether the evidence is vague, uncertain, conflicting or fragmentary." (Emphasis *sic*.)

Further, the trier-of-fact, in this case the jury, is in the best position to assess the credibility of the witnesses presented and to determine the weight to be afforded the evidence offered. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212.

Appellant presents a compelling argument that the fatal shot may have come from "friendly fire." The trajectory of the fatal shot could make it appear that it did not originate from where the shooter was believed to be standing. Appellee did not test Leon's gun, which was the only weapon found at the scene, and therefore could not eliminate it as the murder weapon. The only individuals who gave statements saying they witnessed the fatal shot changed their testimony at trial. Therefore, there was no specific testimony as to who fired the fatal shot.

However, appellee presented a substantial amount of evidence with regard to this issue. Appellee provided a number of theories as to how Moore could have fired the fatal shot from the position in which he was believed to be standing. Appellee called into question the credentials of appellant's trajectory expert, who had never worked on a case involving gun shots. Appellee's expert testified that Leon's nine-millimeter was probably not the weapon that fired the fatal shot, although he could not rule out such possibility. Leon's weapon was disabled when it was discovered, which would have required him to disable it after shooting the fatal shot.

Moore was the only individual seen firing a weapon at 107 Park Avenue in the early morning hours of January 28, 1996. Appellee also pointed to numerous

inconsistencies between the sworn statements and the testimony of witnesses who were friendly with appellant. No one testified that they witnessed the fatal shot; therefore Moore may have been in a different position when the fatal shot was fired. Appellee also pointed to the possibility that the victim's body was moved, which would substantially change the findings of appellant's expert.

While appellant's "friendly fire" theory is certainly compelling, it is only a theory. Appellee provided a substantial amount of evidence that points to Moore as the shooter of the fatal shot. The trier-of-fact was entitled to weigh the facts and theories presented. This court will not disturb the trier-of-fact's determinations when the trier-of-fact chooses to value substantial credible evidence rather than a theory, no matter how compelling that theory may be. Therefore, appellant's conviction was not against the manifest weight of the evidence and his rights under the Ohio Constitution were not violated.

Appellant's second assignment of error is found to be without merit.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

GENE DONOFRIO, P.J., and VUKOVICH, J., concur.