JOURNAL ENTRY AND OPINION
Defendant-appellant Alfred Jones appeals from his jury conviction and maximum sentence for voluntary manslaughter. He argues that his conviction is not supported by sufficient evidence and is against the manifest weight of the evidence and that the trial court did not make the required statutory findings to impose the maximum sentence. We affirm his conviction, but remand for resentencing.
Defendant and three co-defendants were indicted in Case No. CR-385674 for the aggravated murder, purposely and with prior calculation and design, of Robert Jordan. Defendant's cousin, George Brown, a juvenile, was also subsequently indicted for the same homicide in Case No. CR-388273. Before trial, at the prosecution's request, the trial court amended the charge against defendant to murder. The matter ultimately proceeded to a joint trial against only Jones and Brown.
Brown's conviction is the subject of a separate appeal in State v. Brown (Sept. 20, 2001), Cuyahoga App. No. 78423, unreported. The basic facts are as follows: Robert Jordan, the victim, drove his car into an alley, which action forced pedestrians to hurriedly clear out of the way. Andrew Winegarner responded by throwing a beer bottle through the rear window of his vehicle. The victim became upset. Several bystanders fled, believing the victim was retrieving a gun.
Yusuf Calliens testified that Jones ran to get Brown, his cousin, who was not on the scene. After talking with Jones, Brown returned with an object in his pocket which Calliens believed to be a handgun. James Thomas, a friend whom the victim was visiting, testified that he observed Brown, also known as BooSheen, thereafter shoot the victim. The victim died from a single .25 caliber gunshot wound, which entered his back and pierced his heart. He was climbing over a fence, headed in the opposite direction away from Brown. No weapon was found on or near the victim.
The prosecution argued that Jones aided and abetted Brown in committing the homicide. The jury found defendant not guilty of murder, but guilty of the lesser included offense of voluntary manslaughter. The trial court thereafter imposed the maximum sentence of ten years imprisonment for defendant's voluntary manslaughter conviction. Defendant, represented by his trial counsel, appeals, raising four assignments of error.
Defendant's first and second assignments of error challenge the sufficiency of the evidence as follows:
 I. A GUILTY VERDICT IS NOT SUPPORTED BY SUFFICIENT EVIDENCE WHERE, AS HERE, A REASONABLY MINDED JURY WOULD POSSESS A REASONABLE DOUBT RELATING TO THE GUILT OF THE ACCUSED; BECAUSE THIS IS SO THE ACCUSED WAS DENIED DUE PROCESS WHEN HE WAS CONVICTED DESPITE THE LACK OF SUFFICIENT PROOF.
 II. GIVEN THERE IS INSUFFICIENT EVIDENCE TO SUPPORT THE GUILTY VERDICT, IT FOLLOWS THE COURT ERRED WHEN IT DENIED THE DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL MADE AT THE CLOSE OF ALL THE EVIDENCE.
These assignments lack merit.
Defendant argues there was no evidence that he aided and abetted Brown in the homicide. He contends it was inconsistent for the jury to find Brown guilty of murder and him guilty of voluntary manslaughter. Finally, he argues that the evidence was not sufficient to support his conviction for voluntary manslaughter.
The Ohio Supreme Court has summarized the standard governing claims that a conviction is not supported by sufficient evidence, as follows:
 2. An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia [1979], 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)
State v. Jenks (1991), 61 Ohio St.3d 259, syllabus paragraph two (emphasis added).
Contrary to defendant's argument, the record contains sufficient evidence to support both the original charge of aiding and abetting Brown in committing the murder and the lesser included voluntary manslaughter offense for which he was convicted. The prosecution argued that defendant acted in complicity with Brown in the murder of the victim. R.C. 2923.03
prohibits complicity with others to commit crimes and provides as follows:
 (A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
(1) Solicit or procure another to commit the offense;
(2) Aid or abet another in committing the offense;
 (3) Conspire with another to commit the offense in violation of section 2923.01 of the Revised Code;
 (4) Cause an innocent or irresponsible person to commit the offense.
R.C. 2903.02, in turn, defines the crime of murder and provides in pertinent part as follows:
 (A) No person shall purposely cause the death of another or the unlawful termination of another's pregnancy.
When viewed in the light most favorable to the prosecution, the record contains sufficient evidence that defendant aided and abetted Brown in committing the homicide and the trial court properly denied his motion for judgment of acquittal. A person aids and abets another when he assists another in the accomplishment of a common design or purpose. State v. Minor (Mar. 2, 2000), Richland App. No. 99CA63, unreported at *4 (quoting Black's Law Dictionary (6th ed. 1990). The accomplice's criminal intent may be inferred, by direct or circumstantial evidence, from the presence, companionship, and conduct of the accomplice both before and after the offense is committed State v. Nievas (1997),121 Ohio App.3d 451, 456-457.
The facts of the case at bar are similar to those in State v. Slocum (1998), 131 Ohio App.3d 512, which rejected a similar challenge to the sufficiency of the evidence in a case involving complicity to commit murder and to commit attempted murder. Id. at 518. As in the case at bar, the incident in Slocum began with a fight. Slocum left to get some friends and to go to a residence where he believed he could confront those involved in the fight. Slocum and the gunman arrived at the scene separately. Shortly after arriving on the scene, the gunman fired a series of shots. Slocum immediately left by himself, and some evidence indicated he thereafter met a second time with the gunman.
The case at bar does not involve any oral threats by the defendant as in Slocum. Nevertheless, we likewise find the evidence was sufficient to raise a question for the jury concerning whether defendant assisted, incited, or encouraged Brown to accomplish a common design or purpose to commit the homicide.
The record shows that Brown was not present in the alley when the altercation with the victim arose. Yusuf Calliens, a relative of both defendant and Brown, testified that defendant ran from the scene to get Brown to respond to the victim. Brown and Jones talked. Brown ran with defendant wielding what appeared to be a handgun in his jacket pocket. According to Calliens, the two were in the alley for just 15 seconds before Calliens heard shooting.
Calliens walked to a nearby store. Defendant caught up to him and the two spoke. Defendant told Calliens that there was a dead body in front of the row houses. Calliens could not see it despite walking close by because it was dark, but defendant pointed to where it was located. Defendant then denied any knowledge of what occurred and told Calliens that Calliens did not know anything either. Calliens understood this to mean: Keep my mouth shut. Calliens was later threatened and was afraid to testify.
When the evidence is viewed in the light most favorable to the prosecution, the jury could find that defendant and Brown pre-arranged in concert to commit the homicide. Defendant left the scene to get Brown after the altercation with the victim. The two talked and returned together to the scene of the crime. Brown sufficiently displayed the handgun, a deadly weapon, to a third party, who was not with them to discern what it was. Calliens stated when Brown returned, he was running like he had a gun in his jacket pocket. His hand was in his coat pointing an object shaped like a gun that was bigger than his fist.
Defendant was still with Brown when shooting commenced 15 seconds later. Defendant rejoined Calliens, pointed out the location of the dead body, and threatened him not to talk about what he observed. The two fled the scene together when a police officer approached them. The driver of the vehicle described defendant as frantically seeking a ride away from the scene.
Contrary to defendant's argument, the prosecution is not required to produce a confession by an accomplice to prove the existence of a shared criminal purpose. Moreover, when viewed in the light most favorable to the prosecution, the evidence shows significantly more than the mere fact that defendant was present at the scene of the shooting. Brown and his firearm would not have been present if defendant had not brought him to the scene in response to the altercation. Under the circumstances, a reasonable jury could have concluded that defendant enlisted Brown as the triggerman, identified the victim as the target, and had a purpose of causing his death through the use of the deadly weapon.
Defendant was ultimately convicted of the lesser included offense of voluntary manslaughter, rather than murder. The two charges share the same elements, except for the mitigating factor of provocation. State v. Rhodes (1992), 63 Ohio St.3d 613. R.C. 2903.03 defines the crime of voluntary manslaughter as follows:
 (A) No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another or the unlawful termination of another's pregnancy.
The jury could properly find that defendant satisfied his burden of proving the mitigating circumstances, but that Brown did not. Defendant was on the scene when the altercation with the victim arose; Brown was not. Defendant did not object to the instruction on the lesser charge of voluntary manslaughter and the record contains some evidence to support the charge. Under the circumstances, defendant has failed to show any error.
Accordingly, defendant's first and second assignments of error are overruled.
Defendant's third assignment of error follows:
 THE VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND IS CONTRARY TO LAW.
This assignment lacks merit.
Defendant argues that his conviction for voluntary manslaughter is against the manifest weight of the evidence. Specifically, he argues the evidence shows he was merely present when the shooting spontaneously occurred and that he did not aid or abet Brown.
The Ohio Supreme Court has summarized the standard governing claims that a conviction is against the manifest weight of the evidence, as follows:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
State v. Thompkins (1997), 78 Ohio St.3d 380, 387 (quoting State v. Martin(1983), 20 Ohio App.3d 172, 175, 20 Ohio B. Rep. 215, 219,485 N.E.2d 717, 720-721). A significant quantity of the evidence against defendant in the case at bar was provided by Yusuf Calliens. He testified that he was a relative of both defendant and Brown, and defendant has offered no persuasive reason why he would fabricate testimony against him. Under the circumstances, we conclude that the same facts that overcome a sufficiency of the evidence claim also overcome his manifest weight argument.
We do not find that the jury clearly lost its way and created a manifest miscarriage of justice when evaluating the evidence and finding that defendant committed voluntary manslaughter. Substantial, competent, and credible evidence supports the jury verdict.
Accordingly, defendant's third assignment of error is overruled.
Defendant's fourth assignment of error challenges his sentence as follows:
 THE COURT ERRED IN GIVING THE APPELLANT THE MAXIMUM SENTENCE CALLED FOR UNDER THE STATUTE.
This assignment is well taken.
Defendant argues that the trial court imposed the maximum ten-year sentence for involuntary manslaughter without making the required statutory findings. Under the circumstances, we are compelled to agree. State v. Edmonson (1999), 86 Ohio St.3d 324.
Voluntary manslaughter is a felony of the first degree. R.C.2903.03(B). R.C. 2929.14 provides guidance concerning basic prison terms for felonies. R.C. 2929.14(A)(1) provides that the trial court shall impose a definite term of imprisonment within the following range:
 (1) For a felony of the first degree, the prison term shall be three, four, five, six, seven, eight, nine, or ten years.
R.C. 2929.14 (C) governs imposition of the maximum term of imprisonment within this range and provides as follows:
 (C) Except as provided in division (G) of this section or in Chapter 2925. of the Revised Code, the court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders under division (D)(3) of this section, and upon certain repeat violent offenders in accordance with division (D)(2) of this section.
The record in the case at bar reveals that the trial court imposed the maximum ten-year sentence without making the necessary finding that defendant committed the worst form of the offense or posed the greatest likelihood of committing future crimes. R.C. 2929.14(C). Under the circumstances, we reverse the sentence imposed by the trial court and remand for resentencing. State v. Edmonson, supra.
Accordingly, defendant's fourth assignment of error is sustained.
The judgment of the trial court is affirmed in part, reversed in part, and remanded for resentencing. Defendant's conviction for voluntary manslaughter is affirmed. Defendant's sentence is reversed and the matter is remanded for resentencing.
It is ordered that appellee and appellant shall share the costs herein taxed equally.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
COLLEEN CONWAY COONEY, J., and TERRENCE O'DONNELL, J., CONCUR.